2025 IL App (1st) 241795

FIRST DISTRICT,
SIXTH DIVISION
December 12, 2025

No. 1-24-1795 (cons.)

|  |  |  |
|---|---|---|
| | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| | ) | |
| KIMBERLY DEPPA, *et al.*\* | ) | Nos. 22 L 293; 22 L 297; 22 |
| Plaintiffs-Appellees, | ) | L 301; 22 L 3308; 22 L 5352; |
| | ) | 22 L 5370; 22 L 5391; 22 L |
| | ) | 5392; 22 L 5396; 22 L 8311; |
| v. | ) | 22 L 9721; 22 L 10859; 23 L |
| | ) | 575; 23 L 1499; 23 L 2001; |
| ABBOTT LABORATORIES, INC., *et al.*, | ) | 23 L 2786; 23 L 2797; 23 L |
| | ) | 5274; 23 L 12222; 23 L |
| Defendants-Appellants, | ) | 12223; 23 L 12225; 23 L |
| | ) | 12226; 23 L 12738; 23 L |
| | ) | 12739; 23 L 12755; 23 L |
| (MEAD JOHNSON & COMPANY, LLC, *et al.*, | ) | 12756; 23 L 12758; 23 L |
| | ) | 12761; 24 L 857 |
| Defendants-Appellants). | ) | |
| | ) | Honorable |
| | ) | Brendan A. O'Brien, |
| | ) | Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court, with opinion.
Presiding Justice C.A. Walker and Justice Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1        The 29 plaintiffs[1] in this consolidated product liability case all filed suit in Cook County, Illinois, against Abbott Laboratories or Mead Johnson or both, alleging, among other things, that the companies failed to warn of important risks associated with infant formulas, causing their premature babies to develop necrotizing enterocolitis (NEC), which resulted in serious injury or death. Seven plaintiffs reside in Illinois, but only one (Wordlaw) resides in Cook County. The other 22 plaintiffs reside in other states. This case is just one of hundreds of similar lawsuits around the country alleging that manufacturing and design defects in defendants' formulas, negligence, failure to warn, and misrepresentation caused infants to develop NEC.

¶ 2        Discovery revealed the location of potential witnesses, most of whom reside outside Cook County. Abbott and Mead Johnson filed intrastate *forum non conveniens* motions to transfer six plaintiffs' complaints from Cook County to the counties in Illinois where the injured infants were born. Abbott filed interstate *forum non conveniens* motions to dismiss the other 23 complaints in favor of other states where the injured infants were born.

¶ 3        Abbott presented the affidavit of Robyn Spilker, senior brand manager for health care provider marketing, who avers that "no variety of Similac was designed, developed, or manufactured in any way at any property in Illinois" and that the "vast majority of *** employees relevant to the research, design, development, sourcing, packaging, sale, distribution,

---

*See the appendix of this opinion for a list of all plaintiffs, case numbers, and corresponding defendants.

[1] This case is consolidated with 34 other cases on appeal and involves 29 plaintiffs. Six plaintiffs sued Abbott and Mead Johnson. They are the subject of intrastate *forum non conveniens* motions filed by Abbott and Mead Johnson and have two appellate court numbers each: 1-24-2057 and 1-24-2058 (Akala); 1-24-2066 and 1-24-2126 (Struck); 1-24-2119 and 1-24-2127 (Thomas); 1-24-2121 and 1-24-2134 (Ward); 1-24-2123 and 1-24-2173 (Bahena); 1-24-2132 and 1-24-2227 (Wordlaw). The remaining 23 plaintiffs, including Deppa, sued only Abbott. They are the subject of interstate *forum non conveniens* motions filed by Abbott: 1-24-1877 (Gschwend); 1-24-1904 (Bostick); 1-24-1905 (Dunn); 1-24-1906 (Rinehart); 1-24-1907 (Taylor); 1-24-2133 (Wilkes); 1-24-2474 (Faulkner); 1-24-2475 (Davis); 1-24-2476 (Caraballo); 1-24-2478 (Armand-Bradley); 1-24-2498 (Jackson); 1-24-2500 (Felicien); 1-24-2501 (Nelson); 1-24-2502 (Peterson); 1-24-2503 (Phelps); 1-24-2505 (Pye); 1-24-2506 (Shannon); 1-24-2507 (Wright); 1-24-2510 (Allen); 1-24-2511 (Marchand); 1-24-2512 (Sutton); 1-24-2513 (Tschosik).

marketing, and promotion of Similac-branded" products are directed from Abbott Nutrition in Ohio. Spilker identifies 16 employees in Ohio with information "most likely to be relevant to the litigation." Two relevant employees are in Cook County: Abbott Nutrition Global Research and Development's Divisional Vice President and Abbott's Director of Global Citizenship and Shared Value, who is responsible for "educational programming related to preterm and exempt infant formula and fortifier products."

¶ 4        Mead Johnson presented the affidavit of Amy Cook, Director of Human Resources, who avers that by approximately the end of 2018, Mead Johnson's management functions were moved out of Chicago and transitioned to Indiana, New Jersey, and the United Kingdom. Mead Johnson maintains a retail sales team in Cook County devoted primarily to Walgreens. Mead Johnson has 31 employees who still work or reside in Illinois. Fifteen are in Cook County. According to Mead Johnson, they have no more than a "negligible connection, if any, to the claims asserted."

¶ 5        After balancing the private and public interest factors, the circuit court denied all 29 *forum non conveniens* motions, finding the balance of private and public interest factors do not strongly favor transfer or dismissal. We granted defendants' petitions for leave to appeal pursuant to Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020) and consolidated the appeals.

¶ 6        We find the circuit court did not abuse its discretion in denying the six intrastate *forum non conveniens* motions but abused its discretion in denying the 23 interstate *forum non conveniens* motions. Thus, we affirm in part and reverse and remand in part with directions.

¶ 7                                          I. ANALYSIS

¶ 8        All 29 plaintiffs filed their complaints in Cook County, where none of them reside except for Wordlaw, and where none of the injured infants were born. Defendants concede venue is

proper in Cook County but assert that another venue is more convenient and their *forum non conveniens* motions should have been granted. The sole issue before us is whether the circuit court abused its discretion in denying the motions to transfer plaintiffs' actions to another county or dismiss them in favor of another state pursuant to Illinois Supreme Court Rule 187 (eff. Jan. 1, 2018).

¶ 9                                    A. Legal Standard

¶ 10        *Forum non conveniens* is an equitable doctrine that assumes there is more than one proper venue. *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 12. The doctrine allows a court to decline jurisdiction if it appears another forum with proper venue "can better serve the convenience of the parties and the ends of justice." *Id. Forum non conveniens* is " 'founded in considerations of fundamental fairness and sensible and effective judicial administration.' " *Id.* at ¶ 14 (quoting *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005)).

¶ 11        *Forum non conveniens* has two applications in this case: intrastate *forum non conveniens*, affecting six plaintiffs (Akala, Struck, Thomas, Ward, Bahena, and Wordlaw) who sued both Abbott and Mead Johnson, and interstate *forum non conveniens*, affecting 23 plaintiffs (Deppa, Gschwend, Bostick, Dunn, Rinehart, Taylor, Wilkes, Faulkner, Davis, Caraballo, Armand-Bradley, Jackson, Felicien, Nelson, Peterson, Phelps, Pye, Shannon, Wright, Allen, Marchand, Sutton, and Tschosik) who sued only Abbott.

¶ 12        The focus of intrastate *forum non conveniens* is "whether the case is being litigated in the most convenient county." *Lambert v. Goodyear Tire & Rubber Co.*, 332 Ill. App. 3d 373, 378 (2002). If not, it will be transferred to the most convenient county. The focus of interstate *forum non conveniens* is "whether the case is being litigated in the most appropriate state." *Fennell*,

2012 IL 113812, ¶ 13 (citing *Eads v. Consolidated Rail Corp.*, 365 Ill. App. 3d 19, 25 (2006), and citing 3 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 14:1, 220 (2d ed. 2011)). If not, it will be dismissed because Illinois courts lack the power to transfer an action to another state. *Id.*

¶ 13　　Each *forum non conveniens* case is "unique and must be considered on its own facts." *Id.* ¶ 21. "[T]he circuit court must balance the public and private interest factors" and "evaluate the total circumstances of the case in determining whether the balance of factors strongly favors dismissal." *Id.* ¶ 17. "The defendant bears the burden of showing that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties. The defendant cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff." *Id.* ¶ 20.

¶ 14　　"The determination of a *forum non conveniens* motion lies within the sound discretion of the circuit court. On review, the circuit court's determination will be reversed only if it can be shown that the court abused its discretion in balancing the relevant factors. [Citations.] An abuse of discretion will be found where no reasonable person would take the view adopted by the circuit court." *Id.* ¶ 21.

¶ 15　　　　　　　　　B. Deference to Plaintiffs' Choice of Forum

¶ 16　　Defendants contend the circuit court erred in not closely scrutinizing plaintiffs' choice of forum, particularly as to the 28 plaintiffs who reside outside Cook County. We disagree.

¶ 17　　"A plaintiff's right to select the forum is substantial and unless the factors weigh strongly in favor of transfer [or dismissal], the plaintiff's choice of forum should rarely be disturbed." *Gridley*, 217 Ill. 2d at 170. "However, when the plaintiff is foreign to the chosen forum and when the action giving rise to the litigation did not occur in the chosen forum, the plaintiff's

choice *** is accorded less deference." *Id.* But it is still afforded some. See *First American Bank v. Guerine*, 198 Ill. 2d 511, 518 (2002) (" 'the deference to be accorded is only *less*, as opposed to *none*.' " (emphases in original) (quoting *Elling v. State Farm Mutual Automobile Insurance Co.,* 291 Ill. App. 3d 311, 318 (1997))); *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 448 (2006) (citing *Guerine,* 198 Ill. 2d at 518). Because plaintiff Wordlaw resides in Cook County, the circuit court properly gave her choice of forum substantial deference and properly accorded all other plaintiffs less deference.

¶ 18    Citing *Fennell,* 2012 IL 113812, and bemoaning the implications of forum shopping, defendants argue the circuit court should have given "*far* less deference" to the 28 plaintiffs, not just less deference. This is a matter of degree. See *id.* ¶¶ 18, 26; *Langenhorst*, 219 Ill. 2d at 448; *Gridley*, 217 Ill. 2d at 170; *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 173-74 (2003); *Benedict v. Abbott Laboratories, Inc.*, 2018 IL App (1st) 180377, ¶ 33; *Elling*, 291 Ill. App. 3d at 318 (all referring to "less deference," leaving the degree of deference to the court's discretion).

¶ 19    In *Fennell,* the court afforded "*far* less deference" to what was plaintiff's second choice of forum (Illinois), not its first (Mississippi). (Emphasis in original.) *Fennell,* 2012 IL 113812, ¶¶ 25-26. Here, Cook County is plaintiffs' first choice of forum. While " 'courts have never favored forum shopping' " (*id.* ¶ 19 (quoting *Dawdy*, 207 Ill. 2d at 174)), plaintiffs have plausible reasons for choosing Cook County, such as, the smattering of potential witnesses in various states and counties including Cook County, Abbott's headquarters in Illinois, Abbott's registered agent in Cook County, Mead Johnson's former headquarters and current sales operations in Cook County, the location of plaintiffs' and defendants' attorneys in Cook County, the convenient transportation and two international airports in Cook County, and the circuit court of Cook County's consolidated discovery schedule and anticipated use of a bellwether trial process to try

plaintiffs' cases in a perceived streamlined, efficient manner. Considering all this, the circuit court properly gave less deference, but still some, to the chosen forum of the 28 plaintiffs residing outside Cook County.

¶ 20                                    C. Relevant Factors

¶ 21                                  1. Private Interest Factors

¶ 22        In both an interstate and intrastate *forum non conveniens* analysis, the private interest factors to be considered include: (a) the convenience of the parties; (b) the relative ease of access to sources of testimonial, documentary, and real evidence; (c) the cost of obtaining attendance of willing witnesses and the availability of compulsory process to secure attendance of unwilling witnesses; (d) the possibility of viewing the premises, if appropriate; and (e) all other practical considerations that make a trial easy, expeditious, and inexpensive. *Id.* ¶ 15. We consider each factor in turn.

¶ 23                                 a. Convenience of the Parties

¶ 24        As the circuit court recognized, the convenience of the parties does not strongly favor transfer or dismissal. For the six intrastate cases, the only Illinois county arguably more convenient for Abbott is Lake County, where its headquarters and principal place of business are, and where plaintiff Bahena resides and the Bahena infant was born. See *Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 276 (2011) (a party's principal place of business is not dispositive but is an acceptable factor to be weighed in determining convenience of the forum); *Schuster v. Richards,* 2018 IL App (1st) 171558, ¶ 28 (same). As to Bahena, the circuit court found this factor weighs slightly in favor of transfer to Lake County. However, because Lake County is adjacent to Cook County and Abbott "committed to bring any Illinois-sourced evidence to trial no matter where it takes place," this factor is relatively insignificant. See *Benedict*, 2018 IL App (1st) 180377, ¶ 42

(noting that Lake County is adjacent to Cook and Abbott's headquarters is only 30 to 90 minutes from Cook County courthouses); *Snook v. Lake Forest Hospital,* 133 Ill. App. 3d 998, 1001 (1985) (distance between the adjacent counties of Lake and Cook is not so great as to warrant dismissal on the ground of *forum non convenien*s).

¶ 25     As to the other intrastate plaintiffs, Wordlaw lives in Cook County, making Cook County most convenient for her and not terribly inconvenient for Abbott, who has a registered agent and at least two key employees with relevant information in Cook County. The other intrastate plaintiffs reside in Kane, Winnebago, Peoria, Champaign, and Du Page Counties, none of which are directly adjacent to Lake County or have been shown to be more convenient for Abbott. For the interstate cases involving plaintiffs who reside in Connecticut, Georgia, Tennessee, Florida, Texas, North Carolina, Massachusetts, New Jersey, Wisconsin, Washington, Pennsylvania, Virginia, and North Dakota, inconvenience to Abbott does not weigh in favor of dismissal since Abbott's headquarters and principal place of business are in Illinois.

¶ 26     As for Mead Johnson – whose headquarters is in Evansville, Indiana, and whose main employees are in Indiana, New Jersey, and the United Kingdom – it presented no evidence that litigating in any of the potential transferee counties in Illinois would be more convenient than Cook County. Mead Johnson's management functions were in Cook County until approximately the end of 2018, and Mead Johnson still has a sales team located in Cook County. Cook County has two international airports and convenient transportation, making it expedient for Mead Johnson's out-of-state employees to travel here. See *Milton v. Boeing Co.*, 2023 IL App (1st) 220647, ¶ 62. Further, no one from Abbott or Mead Johnson has attested that it would be inconvenient for them to conduct trial in Cook County. As such, the court did not err in weighing this factor against transfer or dismissal.

¶ 27                         b. Ease of Access to Testimonial, Documentary, and Real Evidence

¶ 28        Ease of access to testimonial, documentary, and real evidence does not favor transfer of the six intrastate cases, but it does favor dismissal of the 23 interstate cases, due to potential difficulties in obtaining in-person trial testimony from out-of-state third-party medical witnesses.

¶ 29        The circuit court appropriately gave minimal weight to the ease of access to documentary evidence in all cases, as the copying and transfer of documents and medical records is mainly done electronically, with relative ease and at little expense. *Fennell,* 2012 IL 113812, ¶ 36 ("the location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis in the modern age"); *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 890 (2008) ("the location of documentary evidence has become less significant because today's technology allows documents to be copied and transported easily and inexpensively"); *Benedict,* 2018 IL App (1st) 180377, ¶ 52 (same (citing *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 659 (2009))). Ease of access to real evidence was also properly given no weight since no party identified any relevant real evidence to the case.

¶ 30        As for testimonial access, Abbott identifies 16 employees in Ohio with relevant information about the research, design, development, sourcing, packaging, sale, distribution, marketing, and promotion of its infant formula. Two key, high-level employees in charge of nutrition research and education related to preterm formula products reside in Cook County. However, Abbott concedes that its employees will travel wherever trial is held, so securing their testimony is not problematic.

¶ 31        Mead Johnson identifies its most relevant employees as residing in Indiana, New Jersey, and the United Kingdom. Mead Johnson also identifies a handful of employees who still work or live in Cook County, three of whom plaintiffs maintain have responsibilities relevant to sales and

managing relationships with hospitals: Mead Johnson's national accounts team lead, its manager of commercial training, and its global director of hospital marketing. Since the potential witness-employees are scattered across different counties, states, and countries, no Illinois county is substantially less convenient than any other. Moreover, weighing in favor of Cook County, both defendants have potential witness-employees residing here, pretrial discovery proceedings have been centralized here, and Cook County is home to two international airports and has convenient transportation.

¶ 32      Defendants' main contention is that access to testimony of third-party medical witnesses will be more convenient in the counties or states where each infant was born because this is where their healthcare providers reside or work.

¶ 33      Turning first to the intrastate cases, we observe that not a single intrastate plaintiff has healthcare providers who work or reside solely in the county where the infant was born. They have multiple treaters scattered in various counties and states. For instance, plaintiff Wordlaw's infant was born in Du Page County. They now live in Cook County and have nine healthcare providers in Cook County. Plaintiff Akala was born in Kane County but has healthcare providers in Kane, Du Page, Lake, and McHenry Counties, as well in Georgia. The Akala infant was transferred to and treated in a Cook County hospital within days of being born. The same is true of Bahena, who was born in Lake County, transferred to Cook County, and has healthcare providers in Lake and Du Page Counties. As for plaintiffs Struck and Thomas, whose infants were born in Winnebago County, they have healthcare providers in Cook County and other counties. Plaintiff Ward's infant who was born in Peoria County also has healthcare providers scattered throughout Illinois and receives rehabilitation services related to NEC in Cook County.

¶ 34        Since the potential trial witnesses are scattered among several counties, including Cook, the ease of access to their testimony does not favor transfer in the six intrastate cases. See *Guerine*, 198 Ill. 2d at 526 (a circuit court "abuses its discretion in granting an intrastate *forum non conveniens* motion *** where, as here, the potential trial witnesses are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation"); *Vivas*, 392 Ill. App. 3d at 659 (court did not abuse its discretion in finding access to evidence did not "tilt in favor of any one forum" where "potential witnesses and evidence were scattered among different states and countries"); *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 834 (2006) ("The potential trial witnesses are scattered among different forums, including the plaintiffs' chosen forum, and no single forum enjoys a predominant connection to the litigation.").

¶ 35        The same cannot be said for the 23 interstate cases filed against Abbott. None of the 23 injured interstate infants were born in Illinois. None of the 23 infants ever lived in Illinois. At least eight of the infants have healthcare providers who practice exclusively in the same state in which the infants were born. All other injured infants, except for Deppa, have had healthcare providers in various states, but none in Illinois. Plaintiff Deppa lists a couple of medical professionals in Illinois, but none in Cook County. She lists over a dozen healthcare providers in Ohio, where the infant was born and most of Abbott's research, design, development, sourcing, packaging, sale, distribution, marketing, and promotion of its infant formula occurs. Considering these facts, the circuit court's finding that ease of access to testimonial evidence did not favor dismissal of the interstate cases was unreasonable.

¶ 36        Plaintiffs urge us not to give undue weight to the location of the out-of-state medical witnesses because this is a product liability case, not a medical malpractice case. Although

medical decision-making is not inherent in every product liability case, it is not completely irrelevant. Compare *Benedict*, 2018 IL App (1st) 180377, with *Jones v. Searle Laboratories*, 93 Ill. 2d 366, 374 (1982) (to defend a product liability action, the defendant had to seek knowledge of each plaintiff's medical condition and the knowledge of each treating or prescribing physician concerning the drug), and *Quaid v. Baxter Healthcare Corp.*, 392 Ill. App. 3d 757, 768-72 (2009) (in a product liability case alleging inadequate warnings, testimony of health professionals was relevant in granting defendant's *forum non conveniens* motion). It depends on the facts of each case.

¶ 37　　　　In this case, plaintiffs' complaints focus not just on design defects and manufacturing of Abbott's infant formula in Ohio. They zero in on Abbott's sales and marketing of its formula to out-of-state hospitals and healthcare providers despite known dangers. The complaints allege that Abbott gave out-of-state hospitals, healthcare providers, and parents inadequate warnings and training about its formula. They allege that if the hospitals and healthcare providers had known of the risks associated with the formula, they would not have fed it to the injured infants. Plaintiffs also allege Abbott made misrepresentations to out-of-state hospitals and healthcare providers and used longstanding relationships to persuade them to provide the formula to these infants, causing serious injury or death. In response, Abbott contends causation is at issue, noting the infants' various illnesses, medical conditions, and underweights at birth are relevant to their injuries. All this makes the location of the infants' hospitals and doctors relevant to the *forum non conveniens* analysis, despite this being a product liability case. The circuit court erred in giving this factor short shrift.

¶ 38　　　　Plaintiffs' reliance on *Benedict*, 2018 IL App (1st) 180377, is unavailing. In *Benedict*, out-of-state plaintiffs sued Abbott in Cook County, alleging it failed to warn physicians of

potential birth defects caused by Depakote. As here, Abbott moved under *forum non conveniens* to dismiss for refiling in plaintiffs' home states or transfer to Lake County, where its headquarters are. *Id.* ¶ 2. We affirmed the denial of the motion despite Abbott's contention that access to treating physicians would be more convenient in plaintiffs' home states. *Id.* ¶ 45. Under the facts of that case, we reasoned that because plaintiffs brought a product liability claim, not a medical malpractice claim, the court should be careful not to give "undue weight" to the location of plaintiffs' treating physicians and, instead, should consider the "location of the witnesses and evidence relating to the design and manufacture of the product at issue." (Internal quotation marks omitted.) *Id.* ¶¶ 48-49.

¶ 39        The *Benedict* court did precisely that. It considered the location of 12 Abbott employees with personal knowledge of the marketing, promoting, selling, and labeling of Depakote products. All of them lived in Cook County. *Id.* ¶ 49. It also considered Abbott's 57 employees who it listed as being responsible for the sale or servicing of Depakote products in the Cook County area for the last 10 years. *Id.* ¶ 50.

¶ 40        Here, plaintiffs identify only two Abbott employees in Cook County with information most likely to be relevant to the NEC litigation. Sixteen employees reside in Ohio, and the "vast majority" of research, design, development, sourcing, packaging, sale, distribution, marketing, and promotion of Abbott's infant formula occurs in Ohio. No variety of the formula is designed, developed, or manufactured in Illinois. Abbott also lists, as potential witnesses, reams of out-of-state hospitals and healthcare providers, who are particularly relevant to plaintiffs' claims of misrepresentation and failure to warn.

¶ 41        The circuit court observed that all relevant states have adopted the Uniform Interstate Depositions and Discovery Act (735 ILCS 35/1 *et seq.* (West 2018)), which provides a

streamlined process for out-of-state depositions, many of which will be conducted remotely via videoconference. Thanks to increased technological capabilities and Illinois Supreme Court rules (see Ill. S. Ct. R. 45(c) (eff. Jan. 1, 2023), R. 206(h) (eff. Oct. 1, 2021), R. 241 (eff. Feb. 2, 2023)), this may well be true. However, the presentation of in-person testimony "remains of utmost importance in trials and evidentiary hearings." Ill. S. Ct. R. 241 (Committee Comments (rev. Feb. 2, 2023)). Remote testimony is the exception, not the norm. *Larson v. Illinois Central School Bus*, LLC, 2023 IL App (3d) 220360, ¶ 27. And depositions are an inadequate substitute for those wanting to introduce live testimony at trial. *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 80 (1983); *Lutzenkirchen v. OSF Healthcare System*, 2025 IL App (1st) 250028, ¶ 36 (holding that the ability to present live testimony at trial in lieu of depositions supported transfer to the county where most witnesses were located).

¶ 42    Given plaintiffs' claims about what the out-of-state healthcare providers were told, warned of, and knew about the risks of Abbott's formula, the providers' locations and difficulty in securing their in-person testimony at trial in Cook County weigh heavily in favor of dismissal.

¶ 43    c. Cost of Attendance of Willing Witnesses and Compulsory Process for Unwilling Ones

¶ 44    In terms of cost, Abbott identifies its relevant employees as living in Ohio and Illinois, and Mead Johnson identifies its most relevant employees in Indiana, New Jersey, and the United Kingdom. Because these out-of-state employees would require significant travel to any Illinois county or alternative forum state, the court correctly found the cost factor of these willing witnesses does not weigh in favor of transfer for the intrastate cases.

¶ 45    Defendants complain it would be burdensome and costly to have healthcare providers in other counties of Illinois leave their neonatal intensive care units to travel to Cook County for trial. However, there are no affidavits or specific facts in the record to support this supposition.

No. 1-24-1795 (cons.)

Nonetheless, we agree with Abbott that the cost and burden of transporting out-of-state third-party witnesses to Illinois could be substantial, presupposing the third-party witnesses are willing to come.

¶ 46    As for the intrastate case, Illinois has subpoena power over all Illinois residents, so witnesses living outside Cook County do not pose an obstacle for defendants. See *Lutzenkirchen*, 2025 IL App (1st) 250028, ¶ 39 (availability of compulsory process was a neutral factor, since both the Winnebago and Cook County courts could secure the attendance on in-state witnesses). As for the interstate cases, it does pose a problem, for there is no compulsory process to secure the attendance of unwilling third-party witnesses outside Illinois. See *Skidmore v. Gateway Western Ry. Co.*, 366 Ill. App. 3d 238, 241-42 (2006) (*forum non conveniens* is appropriate where the forum has no ability by the use of "compulsory process to secure the attendance of unwilling witnesses").

¶ 47    Although an evidence deposition could obviate the need for the infants' doctors to testify at trial, it is an inadequate substitute for in-person testimony. See *Moore,* 99 Ill. 2d at 80; *Lutzenkirchen*, 2025 IL App (1st) 250028, ¶ 36. There is also the possibility of eliciting doctors' testimony by Zoom. However, reasonable debate exists over whether this is equivalent to in-person testimony. Though this is a product liability case, the facts giving rise to plaintiffs' claims are tied to the knowledge and conduct of healthcare providers who purchased and administered the infant formula and provided treatment to infants out of state. Given this link, the circuit court should have found the lack of compulsory process heavily favors dismissal.

¶ 48    d. Possibility of Viewing the Premises

¶ 49    Though the possibility of a jury view of the accident site is relevant, its importance diminishes in a product liability case. *Quaid*, 392 Ill. App. 3d at 772 (significance of this factor

- 15 -

diminishes for product liability claim where it is "unlikely that the jury would need to view the premises"); *Guerine*, 198 Ill. 2d at 525 ("[W]e fail to see how a jury view of the accident site will be necessary" in a product liability claim). We agree with the circuit court that this factor does not weigh in favor of transfer or dismissal, as there is no sign the jury will be asked to view defendants' facilities where the formulas were manufactured or the hospitals where the infants were born and treated.

¶ 50                                   e. Other Practical Considerations

¶ 51         While not considered by the circuit court, a practical consideration in this case is whether transfer or dismissal would make the trial of the intrastate and interstate cases easy, expeditious, and inexpensive. As for the intrastate cases, transfer would not help. Indeed, it would inevitably delay the conjoined discovery and consolidated pretrial processes in Cook County that the circuit court designed to streamline pretrial proceedings and ease the difficulty and burdens of litigating these cases.

¶ 52         As for the interstate cases, this factor is more neutral. At oral argument, Abbott expressed a likelihood that it will seek to remove some of the cases to federal court and have them consolidated for pretrial management in the multi-district litigation pending in the Northern District of Illinois. See 28 U.S.C. § 1407 (2018) (allowing for consolidation of similar civil actions filed in different districts for pretrial proceedings). Seemingly, this would help streamline the pretrial process, but Abbott has not shown that trial of these 23 cases would be made easy, expeditious, and inexpensive. As such, we accord this factor little weight.

¶ 53         Overall, we find the trial court did not err in finding the private interest factors do not favor transfer to another Illinois county for the six intrastate cases. However, the difficulty of

access to testimonial evidence, the cost of attendance, and the lack of compulsory process over out-of-state third-party witnesses strongly favor dismissal of the 23 interstate cases.

¶ 54                                    2. Public Interest Factors

¶ 55        Next, we consider the relevant public interest factors: (a) the interest in deciding controversies locally; (b) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (c) the administrative difficulties presented by adding litigation to already congested court dockets. *Fennell*, 2012 IL 113812, ¶ 16. Choice-of-law considerations are also relevant but not usually dispositive. *Vivas*, 392 Ill. App. 3d at 662.

¶ 56                          a. Local Interest in Deciding Controversies

¶ 57        The circuit court weighed the local interest in deciding controversies and said it slightly favors transfer and dismissal. While this factor does not weigh heavily for defendants in the six intrastate cases, the court erred in according this factor so little weight in the 23 interstate cases, as it is difficult to find any connection to Illinois or Cook County for these plaintiffs.

¶ 58        For the six intrastate cases, the Illinois counties where the infants were born clearly have an interest in protecting their citizens from defective products. So too does neighboring Cook County, where the infants were treated after birth, and where defendants' products are sold and regularly prescribed by hospitals and doctors.

¶ 59        The record shows Abbott has contracted with 15 different hospital systems in Cook County over the past five years. Its corporate headquarters is in Lake County, Illinois, and at least two key employees and a registered agent are in Cook County. For nearly a decade, Mead Johnson had its corporate headquarters in Cook County, where its management functions remained until approximately the end of 2018. This is during the time or shortly before the time

- 17 -

all plaintiffs' infants were born. Mead Johnson still maintains a sales office in Cook County and sells its products to at least seven hospital systems in Cook County. And, as noted above, the injured infants in the intrastate cases have had healthcare providers in Cook County, and two of the infants were transferred to Cook County hospitals almost immediately after birth. All this gives the intrastate cases a local connection to Cook County. However, as to the 23 interstate cases, it is difficult to find the same localized interest.

¶ 60    Specifically with respect to Abbott, Illinois residents have a general interest in ensuring the safety of Abbott's products and resolving claims against Abbott because it is headquartered here. See *Malloy v. Du Page Gynecology, S.C.*, 2021 IL App (1st) 192102, ¶ 70 (Cook County had a local interest where the product at issue was regularly prescribed and distributed throughout the county); *Benedict*, 2018 IL App (1st) 180377, ¶ 62 ("The residents of a forum 'have an interest in ensuring the safety of the products that its corporations [produce] and ship throughout the world ***.' " (quoting *Vivas*, 392 Ill. App. 3d at 661)). However, merely conducting business in a county or having a corporate headquarters in a state does not give a forum a natural nexus to all litigation. *Fennell*, 2012 IL 113812, ¶ 47; *Monteagudo v. The Gardens of Belvidere, LLC,* 2023 IL App (1st) 220045, ¶ 53. If it did, then any company headquartered here could be sued here regardless of inconvenience, casting doubt upon the *forum non conveniens* doctrine. *Jones*, 93 Ill. 2d at 377.

¶ 61    Instead, under a *forum non conveniens* analysis, courts are to consider the relative convenience of a forum and connection of the controversy. *Fennell*, 2012 IL 113812, ¶ 47; *Quaid*, 392 Ill. App. 3d at 773. Considering that the allegations of the 23 interstate plaintiffs center around Abbott's conduct directed at out-of-state plaintiffs, out-of-state hospitals, and out-of-state healthcare providers who treated the injured infants all in other states, the local interest

of Cook County and practical connection of the litigation to Illinois is tenuous. The circuit court exceeded the bounds of reason in weighing this factor only slightly in favor of dismissal.

¶ 62                                b. Unfairness of Expense and Jury Burden

¶ 63        In considering the unfairness of expense and burden of jury duty, the court found this factor slightly favors transfer and dismissal, since Cook County citizens have "less of an interest in deciding a case involving a plaintiff who does not reside here and a decedent infant who was not born or given the at-issue formula here." Once again, the circuit court erred in weighing this factor too lightly in the 23 interstate cases. Taken to the extreme, Cook County residents would bear the expense and burden of jury trials between Abbott and all infants diagnosed with NEC all over the world regardless of the inconvenience, simply based on Abbott's headquarters. "This is not the test," and it is contrary to the purpose of *forum non conveniens.* See *Jones*, 93 Ill. 2d at 377.

¶ 64        As we discussed recently in *Lutzenkirchen*, 2025 IL App (1st) 250028, the mere fact defendants do business in Illinois is an insufficient connection between plaintiffs' chosen forum and the litigation. Instead, "the forum where the events giving rise to the litigation occurred holds the strongest interest in resolving the dispute." *Id.* ¶ 64. " 'Jury duty constitutes a burden to the citizens of a county who must serve on the jury.' " *Fennell*, 2012 IL 113812, ¶ 45 (quoting *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 371 (1983)). "Jurors are drawn from their communities to adjudicate disputes that affect those communities. Requiring them to resolve controversies rooted in unrelated jurisdictions undermines this core function." *Lutzenkirchen*, 2025 IL App (1st) 250028, ¶ 61. What we held in *Lutzenkirchen* applies equally here.

¶ 65        Under the facts of the 23 interstate cases, the main events giving rise to plaintiffs' claims all fall outside Illinois. Not only were the infants born and treated elsewhere, by out-of-state

doctors and hospitals, but Abbott attests that no variety of its infant formula "was designed, developed, or manufactured in any way at any property in Illinois" and that the "vast majority of *** employees relevant to the research, design, development, sourcing, packaging, sale, distribution, marketing, and promotion" of its formula products are directed from Abbott Nutrition in Ohio.

¶ 66   It would be patently unfair to burden Cook County residents with jury duty and the expense associated with these complex trials where plaintiffs' home states enjoy a predominant connection to the litigation. The circuit court unreasonably failed to recognize the magnitude of this unfairness by finding this factor only "slightly" favors dismissal. See *Fennell*, 2012 IL 113812, ¶¶ 44-46 (finding no justification for imposing the burden of litigation and jury duty on residents of a county with no significant factual connection to the litigation); *Dawdy*, 207 Ill. 2d at 183 (holding the residents of Madison County should not be burdened with jury duty where the action did not arise in, and had no relation to their county); *Wieser,* 98 Ill. 2d at 371 (circuit court abused its discretion when it refused to dismiss case where the public interest factors, such as burden on jurors and lack of local interest, heavily favored another forum); *Shaw v. Haas,* 2019 IL App (5th) 180588, ¶¶ 32-33 (reversing the denial of *forum non conveniens* motion where all relevant conduct occurred in another county and it would be unfair to burden another county's residents with jury duty); *Madigan v. Hannabarger*, 2025 IL App (4th) 250024-U, ¶ 54 (affirming grant of *forum non conveniens* motion where Illinois lacked significant factual connections to the underlying litigation); *Brandt v. Shekar,* 2020 IL App (5th) 190137, ¶¶ 50-51 (circuit court abused its discretion in denying motion to transfer case to another county where the county plaintiff filed in had no practical connection to the litigation aside from defendant's place of residence); *Czarnecki v. Uno-Ven Co.,* 339 Ill. App. 3d 504, 509 (2003) (presence of

registered agents in Cook County and conducting of business were not significant factors for *forum non conveniens* enough to burden a jury).

¶ 67                              c. Administrative Difficulties

¶ 68        Administrative difficulties caused by court congestion is a "relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly." *Guerine*, 198 Ill. 2d at 517. Court congestion "by itself, *** is not sufficient to justify transfer [or dismissal] *** when none of the other relevant factors weigh strongly in favor of transfer [or dismissal]." *Dawdy*, 207 Ill. 2d at 181.

¶ 69        As for the intrastate cases, the circuit court properly considered the average time from filing to verdict for law jury cases over $50,000 and found Cook County resolves these cases more quickly when compared to all transferee counties aside from Lake County. As such, court congestion did not favor transfer in any cases other than plaintiff Bahena's. Still, we agree with the circuit court's sentiment that "judicial economy would be furthered by retaining the [intrastate] cases here," as similar cases are pending in Cook County, the cases have been centralized to enhance convenience, and the circuit court of Cook County is willing and "well equipped to handle complex product liability cases." See *Langenhorst,* 219 Ill. 2d at 451 (the circuit court "is in the better position to assess the burdens on its own docket" in a *forum non conveniens* analysis).

¶ 70        As for the interstate states, the record supports the court's finding that Abbott failed to show these cases would be resolved more quickly in each alternative state. Abbott presented evidence that Cook County had more total case filings than courts in each alternative state, but the numbers alone are meaningless. Abbott should have presented evidence regarding the number of similar cases filed in the alternative forums and how quickly those cases are resolved

compared to Cook County. See *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 503 (1986) ("Courts should be extremely reluctant to dismiss a case *** merely because that forum's docket has a backlog; and this factor is entitled to almost no weight without evidence to show that the court calendar in another forum would resolve the dispute more expeditiously."). Accordingly, the circuit court correctly found this factor did not weigh in favor of transfer or dismissal.

¶ 71                                     d. Choice of Law

¶ 72        Abbott asserts that the law of the place of injury will apply and, therefore, Illinois courts would have to apply the law of the state where each infant was born and treated in every interstate case. While choice-of-law issues are considered in a *forum non conveniens* analysis, a "choice-of-law determination is required only when a difference in the law will make a difference in the outcome." *Quaid*, 392 Ill. App. 3d at 773.

¶ 73        Abbott has not identified an outcome determinative difference between Illinois law and any alternative state, except for New Jersey. Pointing to *In re Abbott Laboratories*, No. 22 C 1951, 2023 WL 4273701 (N.D. Ill. June 29, 2023), Abbott argues the federal judicial panel on multi-district litigation "has already found such conflicts and confirmed that the law of the state of the infant's treatment applies on liability issues." The court did so only regarding New Jersey law, which here would apply to a singular New Jersey plaintiff (Nelson), not the other 22 interstate plaintiffs. Even so, Illinois courts are " 'competent to determine which law applies to this controversy and to apply the law of [a foreign forum], if necessary.' " *Vivas*, 392 Ill. App. 3d at 662 (quoting *Woodward*, 368 Ill. App. 3d at 837). While Abbott argues this is a significant factor favoring dismissal, Abbott has not proven this to be the case. Nonetheless, we agree with Abbott that the public interest factors weigh strongly in favor of dismissal in favor of the states where the injured plaintiffs were born, given the lack of localized interest between the 23

interstate plaintiffs and Cook County and the unfairness of expense and jury burden on Cook County residents in having to decide not just these 23 cases, but potentially on onslaught of others that have no meaningful factual connection to our county.

¶ 74    In deciding this consolidated case, we have considered the total circumstances of each specific case and all relevant private and public interest factors without emphasizing one over the other. See *Langenhorst*, 219 Ill. 2d at 443 (no one factor should be emphasized in a *forum non conveniens* analysis). In sum, we find Abbott has proven the balance of factors strongly favors dismissal of the 23 interstate plaintiffs' cases. However, as to the six intrastate cases, Abbott and Mead Johnson have failed to prove the balance of factors strongly favors transfer outside of Cook County. Nor have they shown this is a case of exceptional circumstances where the interests of justice require a more convenient forum.

¶ 75                               II. CONCLUSION

¶ 76    Based on the record, we cannot say the circuit court abused its discretion in denying Abbott and Mead Johnson's intrastate *forum non conveniens* motions against plaintiffs Akala, Struck, Thomas, Ward, Bahena, and Wordlaw. However, the court did abuse its discretion in denying Abbott's interstate *forum non conveniens* motions with respect to the other 23 plaintiffs (Deppa, Gschwend, Bostick, Dunn, Rinehart, Taylor, Wilkes, Faulkner, Davis, Caraballo, Bradley, Jackson, Felicien, Nelson, Peterson, Phelps, Pye, Shannon, Wright, Allen, Marchand, Sutton, and Tschosik).

¶ 77    "Time and again, this court has held that fairness requires resolving local controversies in the forums most closely connected to the events." *Lutzenkirchen*, 2025 IL App (1st) 250028, ¶ 69. Cook County is not the forum most closely connected to the 23 interstate infants' injuries and

claims against Abbott. It would pose an undue burden on Cook County resources and its residents to serve on a jury that will decide these cases, and potentially more.

¶ 78       Accordingly, we reverse the denial of the interstate *forum non conveniens* motions and remand with directions. On remand, these 23 actions must be dismissed, conditioned on plaintiffs timely filing their actions in the forums where the infants were born and Abbott accepting service of process from those courts and waiving any available statute of limitations defense. See Ill. S. Ct. R. 187(c)(2) (eff. Jan. 1, 2018). If Abbott refuses to accept service or waive the statute of limitations defense in a particular case, the plaintiff shall be given leave to reinstate the case in the circuit court of Cook County.

¶ 79       Affirmed in part and reversed and remanded in part with directions.

APPENDIX

| Circuit Court No. | Appeal No(s). | Plaintiff(s) | Defendant(s) |
|---|---|---|---|
| 22 L 293 | 1-24-1906 | Anthony Rinehart and Jessica Rinehart, on behalf of Remington Rinehart, deceased | Abbott Laboratories, Inc., and Abbott Laboratories |
| 22 L 297 | 1-24-1877 | Jessica Gschwend and Justin Hodges, on behalf of Emma Hodges, deceased | Abbott Laboratories, Inc., and Abbott Laboratories |
| 22 L 301 | 1-24-1907 | Dorothy Taylor, on behalf of Lonnie Taylor Jr. | Abbott Laboratories Inc., and Abbott Laboratories |
| 22 L 3308 | 1-24-1795 | Kimberly Deppa, individually and on behalf of the estate of Eloise Deppa | Abbott Laboratories, Inc., and Abbott Laboratories |
| 22 L 5352 | 1-24-2123, 1-24-2173 | Beatriz Bahena, individually and on behalf of David Bahena | Mead Johnson and Company, LLC, Mead Johnson Nutrition Company, and Abbott Laboratories |
| 22 L 5370 | 1-24-2057, 1-24-2058 | Lakita Oliphant Akala, individually and on behalf of Qenyatta Jackson | Mead Johnson and Company, Mean Johnson Nutrition Company, and Abbott Laboratories |
| 22 L 5391 | 1-24-2066, 1-24-2126 | Ashley Struck, individually and on behalf of Gunner Patnaude | Mead Johnson and Company, LLC, Mead Johnson Nutrition Company, and Abbott Laboratories |
| 22 L 5392 | 1-24-2119, 1-24-2127 | Anthony Thomas, individually and on behalf of Mackenzie Thomas | Mead Johnson and Company, LLC, Mead Johnson Nutrition Company, and Abbott Laboratories |
| 22 L 5396 | 1-24-2121, 1-24-2134 | Kasara Ward, individually and on behalf of Archer Ward | Mead Johnson and Company, LLC, Mead Johnson Nutrition Company, and Abbott Laboratories |
| 22 L 8311 | 1-24-1905 | Heather Dunn, individually and on behalf of the estate of Bentley Dunn | Abbott Laboratories, Inc., and Abbott Laboratories |
| 22 L 9721 | 1-24-1904 | Ceyairah Bostick, individually and on behalf of Amileyah Bostick | Abbott Laboratories, Inc., and Abbott Laboratories |

| | | | |
|---|---|---|---|
| 22 L 10859 | 1-24-2133 | Emerson Wilkes | Abbott Laboratories, Inc., and Abbott Laboratories |
| 23 L 575 | 1-24-2505 | Rikesja Pye, individually and on behalf of B.H. | Abbott Laboratories |
| 23 L 1499 | 1-24-2500 | Lakeesha Felicien, individually and on behalf of A.S. | Abbott Laboratories |
| 23 L 2001 | 1-24-2132, 1-24-2227 | Nina Wordlaw, individually and on behalf of M.W. | Mead Johnson and Company, LLC, Mead Johnson Nutrition Company, and Abbott Laboratories |
| 23 L 2786 | 1-24-2475 | Sharon Davis, individually and on behalf of Tytianna Davis | Abbott Laboratories |
| 23 L 2797 | 1-24-2478 | Nathalie Armand-Bradley, individually and on behalf of Sebastian Bradley | Abbott Laboratories |
| 23 L 5274 | 1-24-2507 | Paris Wright, individually and on behalf of the estate of A.W. | Abbott Laboratories |
| 23 L 12222 | 1-24-2512 | LaShawn Sutton, individually and on behalf of the estate of Makallah E. Roscoe | Abbott Laboratories and Abbott Laboratories, Inc. |
| 23 L 12223 | 1-24-2511 | Bruce Marchand, individually and on behalf of A.M. | Abbott Laboratories and Abbott Laboratories, Inc. |
| 23 L 12225 | 1-24-2510 | Taneshia Allen, individually and on behalf of C.M. | Abbott Laboratories and Abbot Laboratories, Inc. |
| 23 L 12226 | 1-24-2513 | Bryan Tschosik, individually and on behalf of the estate of Branden M. Tschosik | Abbott Laboratories and Abbott Laboratories, Inc. |
| 23 L 12738 | 1-24-2502 | Bertha J. Peterson, individually and on behalf of the estate of Alana Baranowski | Abbott Laboratories |
| 23 L 12739 | 1-24-2503 | Diana Phelps, individually and on behalf of Dylan Hazen | Abbott Laboratories |
| 23 L 12755 | 1-24-2498 | Yolanda Jackson, individually and on behalf of Nathaniel Nehemiah Mathis | Abbott Laboratories |
| 23 L 12756 | 1-24-2501 | Claudia Nelson, individually and on behalf of the estate of Robert James Nelson III | Abbott Laboratories |
| 23 L 12758 | 1-24-2474 | Kyra Nicole Faulkner, individually and on behalf of the estate of Noah Isaac York | Abbott Laboratories |

| 23 L 12761 | 1-24-2476 | Markia Caraballo, individually and behalf of the estate of Lynnox Caraballo | Abbott Laboratories |
| 24 L 857 | 1-24-2506 | Amber Shannon, individually and on behalf of Elijah Shannon | Abbott Laboratories |

*Deppa v. Abbott Laboratories, Inc.*, 2025 IL App (1st) 241795

| | |
|---|---|
| **Decisions Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 22-L-293, 22-L-297, 22-L-301, 22-L-3308, 22-L-5352, 22-L-5370, 22-L-5391, 22-L-5392, 22-L-5396, 22-L-8311, 22-L-9721, 22-L-10859, 23-L-575, 23-L-1499, 23-L-2001, 23-L-2786, 23-L-2797, 23-L-5274, 23-L-12222, 23-L-12223, 23-L-12225, 23-L-12226, 23-L-12738, 23-L-12739, 23-L-12755, 23-L-12756, 23-L-12758, 23-L-12761, 24-L-857; the Hon. Brendan A. O'Brien, Judge, presiding. |
| **Attorneys for Appellants:** | Linda T. Coberly and Stephen V. D'Amore, of Winston & Strawn LLP, of Chicago, for appellants Abbot Laboratories, Inc., and Abbott Laboratories.<br><br>Anthony J. Monaco, Robert E. Elworth, and Michael W. Pennel, of Swanson, Martin & Bell, LLP, and Joel D. Bertocchi, of Akerman LLP, both of Chicago, for other appellants. |
| **Attorneys for Appellees:** | Ashley Keller and Ben Whiting, of Keller Postman LLC, of Chicago, and Tor A. Hoerman and Kenneth J. Brennan, of TorHoerman Law LLC, of Edwardsville, for appellees. |